## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

In re:                                          CHAPTER 7 PROCEEDING

JACOB WONSOVER                                  Case No. 20-21141

_____/

DOMINGO COMPOSTO and                            Adversary Proceeding No: 21-00007
LUCIA COMPOSTO,

      Plaintiffs-Creditors

v.

JACOB WONSOVER; RIVER STREET
HOLDINGS, LTD., an Illinois corporation,
DENISE WONSOVER and SAMUEL
WONSOVER,

      Defendants.

_____/

## SECOND AMENDED ADVERSARY COMPLAINT

Plaintiffs, DOMINGO COMPOSTO and LUCIA COMPOSTO, by counsel, Blumenthal Law Group PC, pursuant to Bankruptcy Rule 7015, file this Second Amended Adversary Complaint against Defendants JACOB WONSOVER, RIVER STREET HOLDINGS, LTD, DENISE WONSOVER and SAMUEL WONSOVER (collectively "Defendants"), and state as follows:

## JURISDICTION

1.      On December 6, 2020, the Debtor filed a voluntary petition (the "Petition") for relief under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Illinois.

2. As of the date of this Complaint, the Debtor has not been granted a discharge.

3. This Complaint is timely because the date by which a Complaint objecting to the Debtor's discharge or to determine dischargeability of a debt expires on March 8, 2021.

4. All causes of action asserted herein either arise in or are related to Debtor's bankruptcy case and the Debtor's estate. Therefore, the federal district courts and the Bankruptcy Court have original jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b).

5. Additionally, in this action plaintiffs-creditors are objecting to the Debtor's discharge under Bankruptcy Code § § 727(a)(2)(A) and 727(a)(3) and are seeking a determination as to the discharge ability of the debts owed by the Debtor to plaintiffs-creditors under Bankruptcy Code § § 523(a)(2)(A), 523(a)(2)(B), 523(a)(4), and 523(a)(6).

6. This case is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) (A), (H), (I) and (J).

**PARTIES**

7. Plaintiff, Domingo Composto, is a resident of the State of Illinois and is otherwise *sui juris*. Mr. Composto has been involved in the operation of parking facilities and valet parking companies in Chicago for decades.

8. Plaintiff, Lucia Composto, is a resident of the State of Illinois and is otherwise *sui juris*. Mrs. Composto is the wife of Domingo Composto.

9. Defendant, Jacob Wonsover (hereinafter "Wonsover"), is the Debtor in the above-captioned case and at all relevant times has resided in Cook County, Illinois.

10. Defendant, River Street Holdings, Ltd. ("RSH") is a corporation incorporated under the laws of the State of Illinois on February 16, 2017, with its principal place of business at 9500 River Street, Schiller Park in Cook County, Illinois.

11.     Defendant, Denise Wonsover, is a resident of Cook County, Illinois and is the wife of Jacob Wonsover.

12.     On information and belief, Defendant, Samuel Wonsover is a resident of Cook County, Illinois, and is the adult son of Jacob and Denise Wonsover.

### FACTS

13.     This adversarial proceeding stems from Wonsover's fraudulent procurement and misappropriation of approximately $200,000.00 in capital contributions Domingo Composto paid to Wonsover concerning the parties' business endeavor. This proceeding also stems from Wonsover's failure to pay a minimum wage to Domingo and Lucia Composto, who both worked as employees of the business, during which time Wonsover exercised ownership and managerial control over the business.

14.     In 2015, Domingo Composto conceived of the idea for an off-site parking facility near O'Hare Airport and began scouting for locations.

15.     In 2016, Victor Levin, a broker, showed Mr. Composto an abandoned warehouse consisting of approximately 150,000 square feet at 9500 River Street in Schiller Park, Illinois.

16.     Mr. Composto envisioned converting the warehouse into a 700-car parking facility.

17.     In 2016, Mr. Composto entered into negotiations with the property owner and, on July 9, 2016, Composto executed a non-binding letter of intent for a ten-year lease of the property with a one-time five-year option to extend the lease.   See Exhibit A.

18.     In 2016, Mr. Composto expended significant time and large sums of money searching for potential equity investors for his venture.

19.     In late 2016, Mr. Composto was introduced to Wonsover through a mutual friend in Hong Kong.

3

20.     Initially, Wonsover agreed to recruit investors for Mr. Composto on a commission basis but soon expressed an interest in investing his own money in the parking facility venture.

21.     Levin, the broker, also expressed an interest in investing his own money in the parking facility venture.

22.     In January of 2017, Mr. Composto, Levin and Wonsover met to discuss the formation of a partnership to secure the lease on the property, to convert the warehouse into an indoor parking garage, and to operate the parking facility and orally agreed as follows:

    a.  to form a partnership to secure the lease on the property at 9500 River Rd in Schiller Park, Illinois.

    b.  to secure zoning approval for the partnership to operate an indoor parking facility.

    c.  to convert the warehouse into an indoor parking facility.

    d.  to fund the partnership with capital contributions from each partner in the amount of $200,000.

    e.  to allocate an equal 1/3 ownership interest in the partnership to each partner in exchange for each partners' respective capital contribution.

    f.  to operate the parking facility through the partnership.

    g.  to use the capital and subsequent revenues to operate the partnership.

    h.  to employ Composto to operate the day to day aspects of the parking garage facility such as greeting customers and supervising parking attendants.

    i.  to distribute profits and losses to the partners equally in accordance with their ownership interests.

23.     In February of 2017, Mr. Composto, Levin and Wonsover met at the offices of attorney Gene Berkes for the purpose of formalizing their oral agreements and instructed Berkes to draw up a partnership agreement.

24.     Upon information and belief, at Wonsover's subsequent instruction, instead of drawing up a partnership agreement, Berkes registered a corporation with the Illinois Secretary of

State called River Street Holdings, Ltd (referred throughout this Complaint as "RSH") with Wonsover as the sole shareholder.

25.    Wonsover falsely represented to Mr. Composto and Levin that he intended to use RSH as a holding company for the partnership funds until the execution of the lease at a lease closing.

26.    Wonsover touted the tax and other benefits of using RSH as a closing vehicle, touted his experience and expertise in structuring equity-based deals, and assured Mr. Composto and Levin that the parties' oral agreements would be formalized in a written agreement after the lease was executed.

27.    In February of 2017, Wonsover knowingly provided Mr. Composto with a false financial statement, in which Wonsover misrepresented that he had a net worth of $5.2 million. On information and belief, Wonsover's true net worth at the time was closer to $600,000.

28.    Mr. Composto relied on the accuracy and truthfulness of Wonsover's financial statement in deciding to invest with Wonsover and contribute capital toward the parties' business endeavor.

29.    In February of 2017, Wonsover purportedly made a capital contribution of $200,000 toward the partnership. Ongoing investigation and discovery revealed that these funds came from Wonsover's wife, Denise Wonsover. Wonsover has taken the position that these funds were a loan, despite the fact that the money was necessary to predicate Wonsover's ownership interest in the business.

30.    Wonsover deposited his capital contribution into a bank account owned by RSH and continued to represent that the parties' oral agreements would be formalized in a written agreement once the lease was executed.

31.     In reliance on Wonsover's representations and assurances, Mr. Composto made a capital contribution of $35,000.00 to the partnership on or about April 6, 2017.  See Exhibit B.

32.     Wonsover deposited Mr. Composto's capital contribution into RSH's bank account with continued representations and assurances that the parties' oral agreements would be formalized in a written agreement once the lease was executed.

33.     In further reliance on Wonsover's representations and assurances, Mr. Composto made a subsequent capital contribution of $161,913.00 on or about April 24, 2017.  See Exhibit C.

34.     In further reliance on Wonsover's representations and assurances that the parties' oral agreements would be formalized in a written agreement once the lease was signed, Mr. Composto wired his subsequent capital contribution to an account provided by Wonsover that belonged to RSH.

35.     Levin never made a capital contribution to the partnership and eventually he withdrew or was expelled from the partnership.

36.     In or about April of 2017, Wonsover executed a lease for the property at 9500 River Street in Schiller Park.

37.     Upon information and belief, Wonsover directed that the lease be drawn up with RSH as the lessee.

38.     Upon information and belief, Wonsover has an executed copy of the lease. Mr. Composto was never furnished with an executed copy of the lease.

39.     Wonsover also submitted the same false financial statement to the landlord for the property at 9500 River Street, to convince the landlord to allow Wonsover to act as personal guarantor on the lease.

40.     In a later deposition, Wonsover admitted that his net worth was only $600,000, not $5.3 million as reflected in the financial statement.  Wonsover claimed that someone else changed the information in his financial statements before he signed.  However, (a) Wonsover was a veteran broker who began his career in the securities industry in 1981, worked as a registered representative at Paine Webber, Inc., was a broker at Bear Sterns and was familiar with financial statements and (b) Wonsover signed each page of the financial statements as well as a credit application.

41.     In or about April of 2017, and relying on the accuracy of Wonsover's financial statements, Mr. Composto and Wonsover agreed as follows:

    a.  Wonsover would increase his capital contribution in the partnership from $200,000 to $400,000.

    b.  In exchange for the additional capital contribution, Wonsover's share of the partnership would increase from 1/3 to 2/3.

    c.  The parties would immediately meet with an attorney to memorialize their oral agreements in a written agreement.

42.     On May 3, 2017, Mr. Composto and Wonsover met at the offices of attorney Louis Phillips and instructed Phillips to draw up a written agreement memorializing their oral agreements and memorializing Mr. Composto's 1/3 ownership interest.

43.     Upon information and belief, at Wonsover's subsequent instruction, Louis Phillips registered an Illinois Limited Liability Company with the Illinois Secretary of State called River Street Parking LLC (referred herein as "RSP") but did not draw up a partnership agreement reflecting Mr. Composto and Wonsover's oral agreements.

44.     RSP has since been involuntarily dissolved by the Illinois Secretary of State and the parties' oral agreements have not been memorialized in a written agreement.

45.    In derogation of the parties' oral agreements, Wonsover directed revenues from the parking garage facility through RSH, and ultimately for Wonsover's own personal use and benefit.

46.    Ultimately, Wonsover fraudulently induced Mr. Composto into contributing $196,913.00 in principal to Wonsover. Each of the representations Wonsover made to Mr. Composto concerning Wonsover's intent to execute a written agreement as well as those assurances that Wonsover intended to include Mr. Composto as an owner of the business were false, and were known by Wonsover to be false at the time they were made.

47.    The capital contributions Wonsover obtained from Mr. Composto were the direct result of Wonsover's fraud. After inducing those payments from Mr. Composto:

   a.    Wonsover misappropriated Mr. Composto' s partnership contributions by directing all contributions into RSH's bank account and permanently assuming dominion and control over the contributions for personal gain.

   b.    Wonsover misappropriated the lease opportunity at 9500 River Street by executing the lease in RSH's name and permanently assuming dominion and control over the lease for personal gain.

   c.    Wonsover misappropriated all revenues from the operation of the parking garage facility by depositing revenues into RSH's bank account for personal gain.

   d.    Wonsover distributed profits from the operation of the parking garage facility to family members in the form of salaries instead of distributing a third of the profits to Mr. Composto.

48.    On February 19, 2019, Mr. Composto initiated an action in in Cook County Circuit Court. Shortly after Mr. Composto filed this action, Wonsover transferred hundreds of thousands of dollars from River Street Holdings (RSH) to his wife and other family members, thereby drastically reducing the value of RSH.

49.    Wonsover and his wife (Denise Wonsover) transferred property he owned in Antioch, Illinois and retitled that property in the name of Denise and the couple's son (Samuel

Wonsover), as joint tenants.

50.     Wonsover and his wife transferred their primary residence from joint tenancy to tenancy by the entirety.

51.     Each of these actions was fraudulent and was designed to conceal and shield assets from Wonsover's known creditors, including Mr. Composto.

52.     In January of 2017, Composto and Wonsover verbally agreed that, given Mr. Composto's experience in the parking industry, Composto would operate the parking garage on a day-to-day basis, which included greeting customers and managing and supervising the parking attendants.

53.     During the course of their discussions, which began in January of 2017 and continued in the weeks thereafter, Composto and Wonsover verbally agreed that Composto would earn a minimum annual starting salary of $50,000, which would be paid once the business started generating sufficient revenues. The parties also agreed that Mr. Composto would be provided a cell phone and an expense card.

54.     In May 2017, Mr. Composto, Mrs. Composto and Wonsover verbally agreed that Lucia Composto would be hired as a janitor, to provide cleaning services once the business was operational. The parties agreed that Mrs. Composto would be compensated for her time and would be provided with a minimum wage, and that she would be paid once the business started generating sufficient revenues.

55.     Additionally, from 5/2/17 to 7/19/18, Mr. Composto worked as an operator at the parking facility that was under the direction and control of Wonsover. Mr. Composto was not paid a minimum wage, as required under Illinois' Minimum Wage Act, 820 ILCS 105/12 and 820 ILCS 115/14(a).

56.     From 5/3/17 to 6/19/2018, Plaintiff Lucia Composto worked as a janitor at the parking facility that was under the direction and control of Wonsover. Mrs. Composto was not paid a minimum wage, as required under Illinois' Minimum Wage Act, 820 ILCS 105/12(a).

57.     The business began operating on May 8, 2017. Mr. Composto thought he was a partner, who along with Wonsover owned and operated the parking business. From May 2017 to July 2018, Wonsover constantly assured Mr. Composto that the partnership paperwork would be finalized.  In the meantime, Mr. Composto was working long days to build the business.

58.     In addition to working at the parking garage, Mr. Composto was also instrumental in putting together a potential deal with Parking Systems of America (PSA), under which PSA was going to purchase the parking business. That deal ultimately fell apart, however, due to Wonsover's interference and the unreasonable demands he made on PSA.

59.     During the time he worked at the facility, Mr. Composto repeatedly asked Wonsover and the company's bookkeepers for his IRS form K1 and access to the corporate accounts. In April of 2018, one of the company's bookkeepers finally told Mr. Composto that he was not an owner of the company. Needless to say, Mr. Composto was shocked. Mr. Composto also learned that the business was generating regular revenues, and that he and his wife Lucia were the only employees who were not being paid any wages for their labor.

60.     When Wonsover learned what the bookkeeper told Composto, Wonsover fired Mr. Composto and terminated Mr. Composto's cell phone and expense card. Mr. Composto was never provided with the salary he was promised and was never compensated for the 14-months he worked at the parking facility.

61.     Mr. Composto's damages include at least $535,533.23 in compensatory damages, as well as punitive damages, attorney's fees and interest associated with Wonsover fraud and

misappropriation of Mr. Composto's capital contributions.

62.    Lucia Composto is entitled to recover at least $33,319.28 which includes interest and statutory penalties under 820 ILCS 115/14(a). Mrs. Composto also seeks an award of reasonable attorneys' fees and costs associated with that claim.

## COUNT 1: BREACH OF ORAL CONTRACT

63.    Mr. Composto repeats and realleges paragraphs 1 to 62.

64.    This is a claim for breach of oral contract by Mr. Composto against Wonsover.

65.    Mr. Composto has performed all of his obligations under the parties' oral agreements.

66.    Mr. Wonsover breached the conditions and obligations required of him under the parties' oral agreements in each of the following ways

a.    Converted Mr. Composto's partnership contributions by directing all contributions into RSH's bank account and permanently assuming dominion and control over the contributions for personal gain.

b.    Converted the lease opportunity at 9500 River Street by executing the lease in RSH's name and permanently assuming dominion and control over the lease for personal gain.

c.    Converted (and continues to convert) all revenues from the operation of the parking garage facility by depositing revenues into RSH's bank account for personal gain.

d.    Distributed (and continues to distribute) profits from the operation of the parking garage facility to family members in the form of salaries instead of distributing a third of the profits to Mr. Composto.

e.    Refused (and continues to refuse) to allow Mr. Composto access to books and records.

f.    Refused (and continues to refuse) to distribute profits and losses to Mr. Composto.

g.    Refused (and continues to refuse) to issue K1s to Mr. Composto.

h.    Operated (and continues operating) the parking garage facility at 9500 River Street under RSH.

    i.   Terminated Mr. Composto's services as operator of the parking garage facility.

    j.   Asserts (and continues to assert) that Mr. Composto's contribution was a loan.

    k.   Upon information and belief, has failed to increase his capital contribution from $200,000 to $400,000.

67.    As a proximate result of Wonsover's actions, Mr. Composto has sustained damages, loss of his capital, loss of dividends and loss of other business opportunities to be proved at trial of no less than $200,000.

WHEREFORE, Mr. Composto respectfully prays for judgment against Jacob Wonsover for damages in an amount to be proved at trial, for pre-judgment interest, for expenses and costs of suit and for such other relief as deemed fair and appropriate.

## COUNT 2: PROMISSORY ESTOPPEL

68.    Mr. Composto repeats and realleges paragraphs 1 to 62.

69.    This is a claim for promissory estoppel by Mr. Composto against Wonsover.

70.    Wonsover's promise that Mr. Composto would receive a 1/3 ownership share in the partnership operating the parking garage facility was clear and unambiguous.

71.    Mr. Composto relied on Wonsover's promise in agreeing to contribute his life savings of approximately $200,000 to the partnership.

72.    Mr. Composto's reliance was reasonable and foreseeable.

73.    As a proximate result of Wonsover's assurances, Composto has sustained damages, loss of his capital, loss of dividends and loss of other business opportunities to be proved at trial of no less than $200,000.

WHEREFORE, Mr. Composto respectfully prays for judgment against Jacob Wonsover for damages in an amount to be proved at trial, for pre-judgment interest, for expenses and costs of suit and for such other relief deemed fair and appropriate.

## COUNT 3: BREACH OF FIDUCIARY DUTY

74.    Mr. Composto repeats and realleges paragraphs 1 to 62.

75.    This is a claim for breach of fiduciary duty by Mr. Composto against Wonsover.

76.    Wonsover owed Mr. Composto fiduciary duties including the duty to act in good faith, to act honestly, to disclose material facts, not to engage in self-dealing or otherwise use his position to further his personal interests or the interests of his family members at the expense of Mr. Composto.

77.    Wonsover breached his duties as follows:

a.    Converted Mr. Composto's partnership contributions by directing all contributions into RSH's bank account and permanently assuming dominion and control over the contributions for personal gain.

b.    Converted the lease opportunity at 9500 River Street by executing the lease in RSH's name and permanently assuming dominion and control over the lease for personal gain.

c.    Converted (and continues to convert) all revenues from the operation of the parking garage facility by depositing revenues into RSH's bank account for personal gain.

d.    Distributed (and continues to distribute) profits from the operation of the parking garage facility to family members in the form of salaries instead of distributing a third of the profits to Mr. Composto.

e.    Refused (and continues to refuse) to allow Mr. Composto access to books and records.

f.    Refused (and continues to refuse) to distribute profits and losses to Mr. Composto.

g.    Refused (and continues to refuse) to issue K1s to Mr. Composto.

   h.   Operated (and continues operating) the parking garage facility at 9500 River Street under RSH.

   i.   Terminated Mr. Composto's services as operator of the parking garage facility.

   j.   Asserts (and continues to assert) that Mr. Composto's contribution was a loan.

   k.   Upon information and belief, has failed to increase his capital contribution from $200,000 to $400,000.

78.   As a proximate result of Wonsover's actions, Mr. Composto has sustained damages, loss of his capital, loss of dividends and loss of other business opportunities to be proved at trial of no less than $200,000.

79.   Wonsover's willful and/or reckless disregard for Mr. Composto' s rights warrants the imposition of punitive damages to deter Wonsover from engaging in similar conduct in the future.

WHEREFORE, Mr. Composto respectfully prays for judgment against Jacob Wonsover for damages in an amount to be proved at trial, for pre-judgment interest, for expenses and costs of suit, for punitive damages, attorneys' fees and costs, and for such other relief as deemed fair and appropriate.

## COUNT 4: UNJUST ENRICHMENT

80.   Mr. Composto repeats and realleges paragraphs 1 to 62.

81.   This is a claim for unjust enrichment by Mr. Composto against Wonsover and RSH. This count is plead in the alternative to Plaintiffs' breach of contract claim.

82.   Wonsover and RSH have retained the benefit of Mr. Composto's capital contribution of approximately $200,000.

83.   Retention of this benefit without compensation to Mr. Composto violates the fundamental principles of justice, equity and good conscience.

14

WHEREFORE, Mr. Composto respectfully prays for judgment against Jacob Wonsover and River Street Holdings, Ltd., for damages in an amount to be proved at trial, for pre-judgment interest, for expenses and costs of suit, and for such other relief as deemed fair and appropriate.

### COUNT 5: CONVERSION

84.    Mr. Composto repeats and realleges paragraphs 1 to 62.

85.    This is a claim for conversion by Mr. Composto against Wonsover and RSH.

86.    Wonsover and RSH assumed dominion and control over Mr. Composto's capital contribution of approximately $200,000, as well as Mr. Composto's partnership interest in the parking garage facility operated by RSH, with the intent to permanently deprive Composto of the same.

87.    As of April 24, 2017, Wonsover was in receipt of Mr. Composto's capital contributions, totaling $ $196,913.00. Instead of providing Mr. Composto with an ownership interest in the parking facility as the parties' agreed, Wonsover decided to cut Mr. Composto out of the partnership entirely.

88.    Wonsover improperly retained the use and benefit of Mr. Composto's capital contributions – and directed those funds into RSH, an entity under the exclusive ownership and control of Wonsover.

89.    Wonsover thereafter directed revenues from the parking garage facility through RSH, ultimately for Wonsover's own personal use and benefit.

90.    In July of 2018, Mr. Composto discovered that he was never made an owner of the parking business. Thereafter, Mr. Composto made repeated demands to Wonsover that he either provide Mr. Composto with an ownership interest in the parking facility, or otherwise return Mr. Composto's capital contributions. Mr. Wonsover has repeatedly refused to do either.

91.     To date, Mr. Composto has been wrongfully deprived of his ownership interest in the parking facility and has wrongfully deprived of the use of his capital contributions, while Defendant Wonsover, been unjustly enriched by retaining the benefits of both.

92.     Wonsover and RSH's willful and/or reckless disregard for Mr. Composto's rights warrants the imposition of punitive damages to deter Wonsover and RSH from engaging in similar conduct in the future.

WHEREFORE, Mr. Composto respectfully prays for judgment against Jacob Wonsover and River Street Holdings, Ltd., for damages in an amount to be proved at trial, for pre-judgment interest, for expenses and costs of suit, for punitive damages, attorneys' fees and costs, and for such other relief as deemed fair and appropriate.

## COUNT 6

(OMITTED)

## COUNT 7: FRAUD

93.     Mr. Composto repeats and realleges paragraphs 1 to 62.

94.     This is a claim for fraud by Mr. Composto against Wonsover and River Street Holdings, Ltd.

95.     As detailed in the general allegations of this complaint, Wonsover fraudulently induced Mr. Composto into contributing $196,913.00 in principal to Wonsover.

96.     Each of the representations Wonsover made to Mr. Composto concerning Wonsover's intent to execute a written agreement as well as those assurances that Wonsover intended to include Mr. Composto as an owner of the business were false, and were known by Wonsover to be false at the time they were made.

97. After inducing those payments from Mr. Composto:

16

    a.    Wonsover misappropriated Mr. Composto's partnership contributions by directing all contributions into RSH's bank account and permanently assuming dominion and control over the contributions for personal gain.

    b.    Wonsover misappropriated the lease opportunity at 9500 River Street by executing the lease in RSH's name and permanently assuming dominion and control over the lease for personal gain.

    c.    Wonsover misappropriated all revenues from the operation of the parking garage facility by depositing revenues into RSH's bank account for personal gain.

    d.    Wonsover distributed profits from the operation of the parking garage facility to family members in the form of salaries instead of distributing a third of the profits to Mr. Composto.

98.    In addition, Wonsover knowingly provided Mr. Composto with a false financial statement, in which Wonsover misrepresented that he had a net worth of $5.2 million. On information and belief, Wonsover's true net worth at the time was closer to $600,000.

99.    Mr. Composto relied on the accuracy and truthfulness of Wonsover's financial statement in deciding to contribute capital toward the parties' business endeavor and in agreeing to work in the parking facility.

100.    As a direct and proximate result of Wonsover fraudulent promises, representations, and statements, Mr. Composto was fraudulently induced into contributing $196,913.00 in principal to Wonsover.

WHEREFORE, Mr. Composto respectfully prays for judgment against Jacob Wonsover and River Street Holdings, Ltd. for damages in an amount to be proved at trial, for pre-judgment interest, for expenses and costs of suit, for punitive damages, attorneys' fees and costs, and for such other relief as deemed fair and appropriate.

### COUNT 8: CIVIL CONSPIRACY (FRAUD)

101.    Plaintiffs repeat and reallege paragraphs 1 to 62.

102.    This is a claim for civil conspiracy to commit fraud by Mr. Composto against Jacob Wonsover, RSH, Denise Wonsover and Samuel Wonsover.

103.    As detailed in the general allegations of this complaint, Wonsover fraudulently induced Mr. Composto into contributing $196,913.00 in principal to Wonsover. Each of the representations Wonsover made to Mr. Composto concerning Wonsover's intent to execute a written agreement as well as those assurances that Wonsover intended to include Mr. Composto as an owner of the business were false, and were known by Wonsover to be false at the time they were made.

104.    At all times material hereto, RSH, Denise Wonsover and Samuel Wonsover knew that Mr. Wonsover's assurances to Mr. Composto that Mr. Composto would be included as an owner of the business were false.

105.    Denise Wonsover worked as one of the bookkeepers for the business, and worked directly with RSH's accountant in coding bookkeeping entries and managing the company's financial affairs. The bookkeeping entries in the company's general ledger initially showed Mr. Composto's $196,913 payments as an ownership investment in the business. Later, the business created financial statements that reflected Mr. Composto's contributions as a loan to the business.

106.    While Denise Wonsover was working as a bookkeeper, Mr. Composto would frequently ask her for copies of the corporate bank statements and IRS Form K-1, which would reflect Mr. Composto's ownership interest. In response to those inquiries, Denise told Mr. Composto that she would obtain those documents for him, but she never did. Despite knowing that Mr. Composto's capital contribution was falsely labeled as a loan to the business, Denise Wonsover refused to disclose that information to Mr. Composto.

107.    At all times material hereto, Denise Wonsover knew that the $196,913 Mr.

Composto provided to her husband was intended to purchase an ownership interest in the parking business. Working as a bookkeeper for the company, Denise created and/or participated in the creation of false bookkeeping entries, false financial documents, and otherwise worked to conceal and shield Mr. Composto from discovering Mr. Wonsover's fraud.

108.    Jacob Wonsover, Denise Wonsover and Samuel Wonsover engaged in concerted conduct of a common design, with the mutual understanding that the purpose of their common design was to:

   a.   Misappropriate Mr. Composto's partnership contributions by directing all contributions into RSH's bank account and permanently assuming dominion and control over the contributions for personal gain.

   b.   Misappropriate the lease opportunity at 9500 River Street by executing the lease in RSH's name and permanently assuming dominion and control over the lease for the Wonsovers' personal gain.

   c.   Misappropriate all revenues from the operation of the parking garage facility by depositing revenues into RSH's bank account for the Wonsovers' personal gain.

   d.   Distribute profits from the operation of the parking garage facility to family members, including Denise Wonsover and Samuel Wonsover, instead of distributing a third of the profits to Mr. Composto.

109.    Denise Wonsover joined the conspiracy and aided and abetted her husband's fraud as early as February of 2017, when she provided the $200,000 that Wonsover falsely claimed was his own capital contribution toward the partnership. Wonsover subsequently claimed that these funds were a loan, despite the fact that the money was necessary to predicate Wonsover's ownership interest in the business.

110.    Denise Wonsover also conspired with her husband to shield assets from Mr. Wonsover's creditors. Shortly after Mr. Composto filed his original state court action, Wonsover transferred hundreds of thousands of dollars from River Street Holdings (RSH) to Denise

Wonsover and other family members, thereby drastically reducing the value of RSH. Denise Wonsover voluntarily accepted those transfers into her personal account, knowing that she had not provided any reasonably equivalent value for those funds.

111.   Wonsover and Denise Wonsover transferred property he owned in Antioch, Illinois and retitled that property in the name of Denise and the couple's son (Samuel Wonsover), as joint tenants.  Samuel Wonsover accepted an ownership interest in that property, knowing that he had not provided any reasonably equivalent value for that interest.

112.   Denise Wonsover and her husband also transferred their primary residence from joint tenancy to tenancy by the entirety.  Each of these actions was fraudulent and was designed to conceal and shield assets from Wonsover's known creditors, including Mr. Composto.

113.   Each act of the conspiracy was ratified by the other co-conspirators who acted as each other's agents in carrying out the conspiracy to defraud Mr. Composto.

114.   As transferees, Denise Wonsover and Samuel Wonsover did not receive the subject transfers in good faith or for reasonably equivalent value.

115.   At all times material hereto, Denise Wonsover and Samuel Wonsover knew that Jacob Wonsover defrauded Mr. Composto, and Denise Wonsover and Samuel Wonsover knew that the funds they received from the parking garage business were not earned or provided in exchange for reasonably equivalent value.

116.   Alternatively, Denise Wonsover and Samuel Wonsover joined the conspiracy after Jacob Wonsover defrauded Mr. Composto, when Denise Wonsover and Samuel Wonsover assisted Jacob Wonsover in transferring assets from Mr. Wonsover's name in order to shield assets and protect Wonsover's ill-gotten gains.

117. Both Denise Wonsover and Samuel Wonsover knew that Jacob Wonsover misappropriated Mr. Composto's partnership contributions and misappropriated the revenues from the parking garage facility, and Denise Wonsover and Samuel Wonsover approved of Jacob Wonsover's wrongful acts after they were done and availed themselves of the fruits of such improper conduct.

118. By reason of the conspiracy alleged herein, Mr. Composto has been and continues to be damaged.

WHEREFORE, Mr. Composto respectfully prays for judgment against Jacob Wonsover, River Street Holdings, Ltd., Denise Wonsover and Samuel Wonsover, for damages in an amount to be proved at trial, for pre-judgment interest, for expenses and costs of suit, for punitive damages, attorneys' fees and costs, and for such other relief as deemed fair and appropriate.

## COUNT 9: VIOLATION OF ILLINOIS MINIMUM WAGE LAW (820 ILCS 105/1)

119. Mr. Composto repeats and realleges paragraphs 1 to 62.

120. This is a claim for violations of the Illinois Minimum Wage Law (820 ILCS 105/1, *et seq*), by Mr. Composto against Jacob Wonsover and RSH.

121. Defendants Wonsover and RSH were each an "employer" of Mr. Composto within the meaning of the Illinois Minimum Wage Law.

122. From 5/2/17 to 7/19/18, Mr. Composto worked as an operator at the parking facility that was under the direction and control of Wonsover and RSH. Mr. Composto was not paid a minimum wage as required under Illinois' Minimum Wage Act, 820 ILCS 105/12(a).

123. Mr. Composto was never paid for the hours he worked at the facility. At the time, Mr. Composto had a good faith belief that he would be compensated for all of the hours he worked, once the parking business was well established and the business was making a regular profit.

124.    Attached as Exhibit D is a spreadsheet detailing the number of hours Mr. Composto worked for each pay period from May 2017 to July 2018, as well as the minimum weekly wages, overtime and other damages Mr. Composto is entitled to recover under Illinois law.

125.    Unbeknownst to Mr. Composto, Wonsover had no intention of paying Mr. Composto for his labor and intended to keep Mr. Composto's capital contributions for his own use and benefit.

126.    Defendants' acts as complained of herein, namely the continuing refusal and failure to pay the earned compensation and overtime wages to Mr. Composto for the period described herein, constitutes a violation of the Illinois Minimum Wage Law, 820 ILCS § 105/1, *et seq.*

127.    Pursuant to 820 ILCS 105/12, Wonsover and RSH are additionally liable to Mr. Composto "for damages in the amount of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid."

128.    Finally, Mr. Composto is entitled to recover his attorney's fees and costs incurred in prosecuting this claim, pursuant to 820 ILCS 105/12.

WHEREFORE, Mr. Composto respectfully prays for judgment against Jacob Wonsover and River Street Holdings, Ltd. for all damages available under the Illinois Minimum Wage Law, for pre-judgment interest, for expenses, attorneys' fees and costs, and for such other relief as deemed fair and appropriate.

## COUNT 10: VIOLATION OF ILLINOIS WAGE PAYMENT AND COLLECTION ACT (820 ILCS 115/1)

129.    Mr. Composto repeats and realleges paragraphs 1 to 62.

130.    This is a claim for violations of the Illinois Wage Payment and Collection Act, (820 ILCS 115/1, *et seq*), by Mr. Composto against Jacob Wonsover and RSH.

131.    Pursuant to an oral agreement between Mr. Composto and Jacob Wonsover, the

parties agreed that Mr. Composto would work as an operator at the parking facility, in exchange for a minimum annual starting salary of $50,000. Mr. Composto has been involved in the operation of parking facilities and valet parking companies in Chicago for decades and had the necessary experience to help in the day to day operations of the new parking business.

132.    From 5/2/17 to 7/19/18, Mr. Composto worked as an operator at the parking facility that was under the direction and control of Wonsover and RSH. Mr. Composto was never paid for the hours he worked at the facility. At the time, Mr. Composto had a good faith belief that he would be compensated for all of the hours he worked, once the parking business was well established and the business was making a regular profit.

133.    Attached as Exhibit D is a spreadsheet detailing the number of hours Mr. Composto worked for each pay period from May 2017 to July 2018, as well as the minimum weekly wages, overtime and other damages Mr. Composto is entitled to recover under Illinois law.

134.    Unbeknownst to Mr. Composto, Wonsover had no intention of paying Mr. Composto for his labor and intended to keep Mr. Composto's capital contributions for his own use and benefit.

135.    Mr. Composto was not paid a wage as required under the Illinois Wage Payment and Collection Act.

136.    Defendants Wonsover and RSH were each an "employer" of Mr. Composto within the meaning of the Wage Payment and Collection Act. Section 13 of the Act provides that "[i]n addition to an individual who is deemed to be an employer pursuant to Section 2 of this Act, any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation." 820 ILCS 115/13.

23

137.    The Act provides that employees are to be paid wages earned during the semimonthly pay period and are to be paid these wages no later than 13 days after the end of the said pay period. 820 ILCS 115/3, 4.

138.    The Act further provides that final compensation must be paid in full at the time of separation, but no later than the next regularly scheduled payday. 820 ILCS 115/5.

139.     Defendants violated the Act by underpaying Mr. Composto, as stated above.

140.    Aside from their underpayments to Mr. Composto, Defendants are also liable for additional damages of 2% of Defendants' underpayments to Mr. Composto for each month in which the underpayments remain unpaid, pursuant to 820 ILCS 115/14.

141.    Additionally, Mr. Composto is entitled to recover his attorney's fees incurred in prosecuting this claim, pursuant to 820 ILCS 115/14.

WHEREFORE, Mr. Composto respectfully prays for judgment against Jacob Wonsover and River Street Holdings, Ltd. for all damages available under the Illinois Wage Payment and Collection Act, for pre-judgment interest, for expenses, attorneys' fees and costs, and for such other relief as deemed fair and appropriate.

## <u>COUNT 11: VIOLATION OF ILLINOIS MINIMUM WAGE LAW (820 ILCS 105/1)</u>

142.    Lucia Composto repeats and realleges paragraphs 1 to 62.

143.    This is a claim for violations of the Illinois Minimum Wage Law (820 ILCS 105/1, *et seq*), by Lucia Composto against Jacob Wonsover and RSH.

144.    Pursuant to an oral agreement between Mrs. Composto, Jacob Wonsover and Mr. Composto, the parties agreed that Mrs. Composto would work as a part-time janitor at the parking facility, in exchange for a minimum wage.

145.    Defendants Wonsover and RSH were each an "employer" of Lucia Composto,

within the meaning of the Illinois Minimum Wage Law.

146.    From 5/3/17 to 6/19/2018, Lucia Composto worked as a janitor at the parking facility that was under the direction and control of Wonsover and RSH. Lucia Composto was not paid a minimum wage as required under Illinois' Minimum Wage Act, 820 ILCS 105/12(a).

147.    Attached as Exhibit E is a spreadsheet detailing the number of hours Mrs. Composto worked for each pay period from May 2017 to June 2018, as well as the minimum weekly wages, overtime and other damages Mrs. Composto is entitled to recover under Illinois law.

148.    At all times material hereto, Wonsover and RSH knew that Lucia was working at the parking facility and knew that Lucia was providing services to Wonsover and RSH, based on her husband, Domingo Composto's, capital contributions and her husband's oral agreements with Wonsover.

149.    Defendants' acts as complained of herein, namely the continuing refusal and failure to pay the earned compensation and overtime wages to Lucia Composto for the period described herein, constitutes a violation of the Illinois Minimum Wage Law, 820 ILCS § 105/1, *et seq.*

150.    Pursuant to 820 ILCS 105/12, Wonsover and RSH are additionally liable to Lucia Composto "for damages in the amount of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid."

151.    Finally, Lucia Composto is entitled to recover her attorney's fees and costs incurred in prosecuting this claim, pursuant to 820 ILCS 105/12.

WHEREFORE, Lucia Composto respectfully prays for judgment against Jacob Wonsover and River Street Holdings, Ltd. for all damages available under the Illinois Minimum Wage Law,

for pre-judgment interest, for expenses, attorneys' fees and costs, and for such other relief as deemed fair and appropriate.

## COUNT 12: VIOLATION OF ILLINOIS WAGE PAYMENT AND COLLECTION ACT (820 ILCS 115/1)

152.    Lucia Composto repeats and realleges paragraphs 1 to 62.

153.    This is a claim for violations of the Illinois Wage Payment and Collection Act, (820 ILCS 115/1, *et seq*), by Lucia Composto against Jacob Wonsover and RSH.

154.    Pursuant to an oral agreement between Mrs. Composto, Jacob Wonsover and Mr. Composto, the parties agreed that Mrs. Composto would work as a part-time janitor at the parking facility, in exchange for a minimum wage.

155.    From 5/3/17 to 6/19/2018, Lucia Composto worked as a janitor at the parking facility that was under the direction and control of Wonsover and RSH. Lucia Composto was not paid a wage as required under the Illinois Wage Payment and Collection Act.

156.    Attached as Exhibit E is a spreadsheet detailing the number of hours Mrs. Composto worked for each pay period from May 2017 to June, 2018, as well as the minimum weekly wages, overtime and other damages Mrs. Composto is entitled to recover under Illinois law.

157.    Defendants Wonsover and RSH were each an "employer" of Lucia Composto within the meaning of the Wage Payment and Collection Act. Section 13 of the Act provides that "[i]n addition to an individual who is deemed to be an employer pursuant to Section 2 of this Act, any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation." 820 ILCS 115/13.

158.    The Act provides that employees are to be paid wages earned during the semimonthly pay period and are to be paid these wages no later than 13 days after the end of the said pay period. 820 ILCS 115/3, 4.

159.    The Act further provides that final compensation must be paid in full at the time of separation, but no later than the next regularly scheduled payday. 820 ILCS 115/5.

160.     Defendants violated the Act by underpaying Lucia Composto, as stated above.

161.    Aside from their underpayments to Lucia Composto, Defendants are also liable for additional damages of 2% of Defendants' underpayments to Lucia Composto for each month in which the underpayments remain unpaid, pursuant to 820 ILCS 115/14.

162.    Additionally, Lucia Composto is entitled to recover her attorney's fees incurred in prosecuting this claim, pursuant to 820 ILCS 115/14.

WHEREFORE, Lucia Composto respectfully prays for judgment against Jacob Wonsover and River Street Holdings, Ltd., for all damages available under the Illinois Wage Payment and Collection Act, for pre-judgment interest, for expenses, attorneys' fees and costs, and for such other relief as deemed fair and appropriate.

## COUNT 13: NON-DISCHARGEABILITY OF DOMINGO COMPOSTO'S CLAIMS UNDER SECTION 523(a)(2)(A) OF THE BANKRUPTCY CODE

163.     Mr. Composto repeats and re-alleges the allegations set forth in paragraphs 1 to 62 of this Complaint as if fully set forth herein.

164.    In this action, Domingo Composto seeks to recover no less than $535,533.23 in compensatory damages, as well as punitive damages, attorney's fees and interest associated with Wonsover's fraud and misappropriation of Mr. Composto's capital contributions to the parties' business endeavor.

165.    Additionally, Mr. Composto seeks to recover $124,685.55 in minimum wages, interest and statutory penalties under 820 ILCS 115/14(a). From 5/2/17 to 7/19/18, and in reliance on Wonsover's representations that Mr. Composto was purchasing an ownership interest in the parking facility, Mr. Composto worked as an operator at the parking facility that was under the direction and control of Wonsover. Mr. Composto was not paid a minimum wage, as required under Illinois' Minimum Wage Act, 820 ILCS 105/12(a).

166.    Bankruptcy Code § 523(a)(2)(A) provides, in relevant part, that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt –
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
> (A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .

167.    All or part of the debt owed to Domingo Composto is non-dischargeable as it is a debt for money and services that were obtained by false pretenses, a false representation, or actual fraud within the meaning of Bankruptcy Code § § 523(a)(2)(A).

WHEREFORE, Plaintiff-Creditor, Domingo Composto respectfully requests that this Court enter a Judgment determining that the debts alleged herein are non-dischargeable under Bankruptcy Code § § 523(a)(2)(A), and that the Court grant Plaintiff such other and further relief as this Court may deem just and proper.

## COUNT 14: NON-DISCHARGEABILITY OF DOMINGO COMPOSTO'S CLAIMS UNDER SECTION 523(a)(2)(B) OF THE BANKRUPTCY CODE

168.    Mr. Composto repeats and re-alleges the allegations set forth in paragraphs 1 to 62 of this Complaint as if fully set forth herein.

28

169.    Domingo Composto seeks to recover no less than $535,533.23 in compensatory damages, as well as punitive damages, attorney's fees and interest associated with Wonsover's fraud and misappropriation of Mr. Composto's capital contributions to the parties' business endeavor.

170.    Additionally, Mr. Composto's seeks to recover no less than $124,685.55 in minimum wages, interest and statutory penalties under 820 ILCS 115/14(a). From 5/2/17 to 7/19/18, and in reliance on Wonsover's financial statements and representations that Mr. Composto was purchasing an ownership interest in the parking facility, Mr. Composto worked as an operator at the parking facility that was under the direction and control of Wonsover. Mr. Composto was not paid a minimum wage, as required under Illinois' Minimum Wage Act.

171.    Bankruptcy Code § 523(a)(2)(B) provides, in relevant part, that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt –
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
> (B) use of a statement in writing—
>
> > (i)  that is materially false;
> >
> > (ii)  respecting the debtor's or an insider's financial condition;
> >
> > (iii)  on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> >
> > (iv)  that the debtor caused to be made or published with intent to deceive; or

172.    In February of 2017, Wonsover knowingly provided Composto with a false financial statement, in which Wonsover misrepresented that he had a net worth of $5.2 million.  On information and belief, Wonsover's true net worth at the time was closer to $600,000.

173.    Composto relied on the accuracy and truthfulness of Wonsover's financial statement in deciding to contribute capital toward the parties' business endeavor and in agreeing to work in the parking facility.

174.    All or part of the debt owed to Mr. Composto is non-dischargeable as it is a debt for money and services that were obtained by false and deceptive statement in writing, within the meaning of Bankruptcy Code § § 523(a)(2)(B).

WHEREFORE, Plaintiff-Creditor, Domingo Composto respectfully requests that this Court enter a Judgment determining that the debts alleged herein are non-dischargeable under Bankruptcy Code § 523(a)(2)(B), and that the Court grant Plaintiff such other and further relief as this Court may deem just and proper.

## COUNT 15: NON-DISCHARGEABILITY OF DOMINGO COMPOSTO'S CLAIMS UNDER SECTION 523(a)(4) OF THE BANKRUPTCY CODE

175.    Mr. Composto repeat and re-allege the allegations set forth in paragraphs 1 through 62 of this Complaint as if fully set forth herein.

176.    Domingo Composto seeks to recover no less than $535,533.23 in compensatory damages, as well as punitive damages, attorney's fees and interest associated with Wonsover's fraud and misappropriation of Mr. Composto's capital contributions to the parties' business endeavor.

177.    Additionally, Mr. Composto seeks to recover no less than $124,685.55 in minimum wages, interest and statutory penalties under 820 ILCS 115/14(a). From 5/2/17 to 7/19/18, and in reliance on Wonsover's financial statements and representations that Mr. Composto was purchasing an ownership interest in the parking facility, Mr. Composto worked as an operator at the parking facility that was under the direction and control of Wonsover. Mr. Composto was not paid a minimum wage, as required under Illinois' Minimum Wage Act.

178.   Bankruptcy Code § 523(a)(4) provides, in relevant part, that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt –

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. . . .

179.   The capital contributions Mr. Composto paid to Wonsover were made in-trust, which Wonsover knew were intended to purchase an ownership interest in the parking garage facility.

180.   In accepting those capital contributions, Wonsover owed Composto fiduciary duties, including the duty to act in good faith, to act honestly, to disclose material facts, not to engage in self-dealing or otherwise use his position to further his personal interests or the interests of himself and his family members at the expense of Composto.

181.   Composto relied on that fiduciary relationship in deciding to contribute capital toward the parties' business endeavor and in agreeing to work in the parking facility.

182.   All or part of the debt owed to Domingo Composto is non-dischargeable as it is a debt based on the fraud or defalcation by Wonsover, while Wonsover was acting in a fiduciary capacity within the meaning of Bankruptcy Code § § 523(a)(4).

**WHEREFORE**, Plaintiff-Creditor, Domingo Composto respectfully requests that this Court enter a Judgment determining that the debts alleged herein are non-dischargeable under Bankruptcy Code § 523(a)(4), and that the Court grant Plaintiff such other and further relief as this Court may deem just and proper.

## COUNT 16: NON-DISCHARGEABILITY OF DOMINGO COMPOSTO'S CLAIMS UNDER SECTION 523(a)(6) OF THE BANKRUPTCY CODE

183.    Mr. Composto repeats and re-alleges the allegations set forth in paragraphs 1 through 62 of this Complaint as if fully set forth herein.

184.    Mr. Composto seeks to recover no less than $535,533.23 in compensatory damages, as well as punitive damages, attorney's fees and interest associated with Wonsover fraud and misappropriation of Mr. Composto's capital contributions to the parties' business endeavor.

185.    Bankruptcy Code § 523(a)(6) provides, in relevant part, that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt –

> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

186.    All or part of the debt owed to Domingo Composto is non-dischargeable as it is a debt that stems from a willful and malicious injury by Wonsover within the meaning of Bankruptcy Code § 523(a)(6).

187.    More specifically, and as detailed in the general allegations of this complaint, Wonsover knowingly and intentionally induced Mr. Composto into paying approximately $200,000 in capital contributions, based on Wonsover's assurances that Mr. Composto would be a partner and owner in the parking business. Wonsover then kept those capital contributions for his own personal benefit, and refused to provide Mr. Composto with a commensurate ownership interest in the parking business.

188.    Thereafter, Wonsover continued to lie to Mr. Composto that the partnership agreement would be finalized, and Wonsover then fraudulently induced Mr. Composto and his wife into working at the parking facility for a period of approximately 14 months, based on the

false promise that Mr. Composto was a part owner in the business, and that Mr. and Mrs. Composto would be compensated for their time once the business was stable and generating sufficient revenues. Unbeknownst to the Compostos, the business was already generating significant revenues, all while the couple worked tirelessly, believing that their hard work was helping build a business that Mr. Composto was an owner of.

WHEREFORE, Plaintiff-Creditor, Domingo Composto respectfully requests that this Court enter a Judgment determining that the debts alleged herein are non-dischargeable under Bankruptcy Code § 523(a)(6), and that the Court grant Plaintiff such other and further relief as this Court may deem just and proper.

## COUNT 17: NON-DISCHARGEABILITY OF LUCIA COMPOSTO'S CLAIMS UNDER SECTION 523(a)(2)(A) OF THE BANKRUPTCY CODE

189.   Lucia Composto repeats and re-alleges the allegations set forth in paragraphs 1 through 62 of this Complaint as if fully set forth herein.

190.   From 5/3/17 to 6/19/2018, Lucia Composto worked as a janitor at the parking facility that was under the direction and control of Wonsover. Mrs. Composto was not paid a minimum wage as required under Illinois' Minimum Wage Act, 820 ILCS 105/12(a).

191.   Attached as Exhibit E is a spreadsheet detailing the number of hours Mrs. Composto worked for each pay period from May 2017 to June 2018, as well as the minimum weekly wages, overtime and other damages Mrs. Composto is entitled to recover under Illinois law.

192.   At all times material hereto, Wonsover knew that Lucia was working at the parking facility and knew that Lucia was providing services to Wonsover, based on Domingo Composto's capital contributions and her husband's oral agreements with Wonsover.

193.   Bankruptcy Code § 523(a)(2)(A) provides, in relevant part, that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt –

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

(A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition .
. . .

194.    All or part of the debt owed to Lucia Composto is non-dischargeable as it is a debt for services that were obtained by false pretenses, a false representation, or actual fraud within the meaning of Bankruptcy Code § § 523(a)(2)(A).

WHEREFORE, Plaintiff-Creditor, Lucia Composto respectfully requests that this Court enter a Judgment determining that the debts alleged herein are non-dischargeable under Bankruptcy Code § 523(a)(2)(A), and that the Court grant Plaintiff such other and further relief as this Court may deem just and proper.

## COUNT 18: NON-DISCHARGEABILITY OF LUCIA COMPOSTO'S CLAIMS UNDER SECTION 523(a)(2)(B) OF THE BANKRUPTCY CODE

195.    Lucia Composto repeats and re-alleges the allegations set forth in paragraphs 1 through 62 of this Complaint as if fully set forth herein.

196.    From 5/3/17 to 6/19/2018, Lucia Composto worked as a janitor at the parking facility that was under the direction and control of Wonsover. Mrs. Composto was not paid a minimum wage, as required under Illinois' Minimum Wage Act, 820 ILCS 105/12(a).

197.    Attached as Exhibit E is a spreadsheet detailing the number of hours Mrs. Composto worked for each pay period from May 2017 to June 2018, as well as the minimum weekly wages, overtime and other damages Mrs. Composto is entitled to recover under Illinois law.

198.    At all times material hereto, Wonsover knew that Lucia was working at the parking

facility and knew that Lucia was providing services to Wonsover, based on Domingo Composto's

capital contributions and her husband's oral agreements with Wonsover.

199.    Bankruptcy Code § 523(a)(2)(B) provides, in relevant part, that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt –

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

> (B) use of a statement in writing—

> > (i)  that is materially false;

> > (ii)  respecting the debtor's or an insider's financial condition;

> > (iii)  on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

> > (iv)  that the debtor caused to be made or published with intent to deceive; or

200.    In February of 2017, Wonsover knowingly provided Mr. Composto with a false

financial statement, in which Wonsover misrepresented that he had a net worth of $5.2 million.  On

information and belief, Wonsover's true net worth at the time was closer to $600,000.

201.    Mr. Composto relied on the accuracy and truthfulness of Wonsover's financial

statement in deciding to contribute capital toward the parties' business endeavor and in agreeing

to work in the parking facility.

202.    Similarly, Lucia Composto relied on the accuracy and truthfulness of Wonsover's

financial statement in agreeing to work in the parking facility and provide services for Wonsover's

benefit.

203.    All or part of the debt owed to Lucia Composto is non-dischargeable as it is a debt

for services that was obtained by false and deceptive statement in writing, within the meaning of

Bankruptcy Code § § 523(a)(2)(B).

WHEREFORE, Plaintiff-Creditor, Lucia Composto respectfully requests that this Court enter a Judgment determining that the debts alleged herein are non-dischargeable under Bankruptcy Code § 523(a)(2)(B), and that the Court grant Plaintiff such other and further relief as this Court may deem just and proper.

## COUNT 19: NON-DISCHARGEABILITY OF LUCIA COMPOSTO'S CLAIMS UNDER SECTION 523(a)(6) OF THE BANKRUPTCY CODE

204.    Lucia Composto repeats and re-alleges the allegations set forth in paragraphs 1 through 62 of this Complaint as if fully set forth herein.

205.    From 5/3/17 to 6/19/2018, Lucia Composto worked as a janitor at the parking facility that was under the direction and control of Wonsover. Mrs. Composto was not paid a minimum wage, as required under Illinois' Minimum Wage Act, 820 ILCS 105/12(a).

206.    Attached as Exhibit E is a spreadsheet detailing the number of hours Mrs. Composto worked for each pay period from May 2017 to June 2018, as well as the minimum weekly wages, overtime and other damages Mrs. Composto is entitled to recover under Illinois law.

207.    At all times material hereto, Wonsover knew that Lucia was working at the parking facility and knew that Lucia was providing services to Wonsover, based on Domingo Composto's capital contributions and her husband's oral agreements with Wonsover.

208.    Bankruptcy Code § 523(a)(6) provides, in relevant part, that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt –
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

209.    All or part of the debt owed to Lucia Composto is non-dischargeable as it is a debt that stems from a willful and malicious injury by Wonsover within the meaning of Bankruptcy Code § 523(a)(6).

WHEREFORE, Plaintiff-Creditor, Lucia Composto respectfully requests that this Court enter a Judgment determining that the debts alleged herein are non-dischargeable under Bankruptcy Code § 523(a)(6), and that the Court grant Plaintiff such other and further relief as this Court may deem just and proper.

Dated: August 18, 2021                          /s/ Grant Blumenthal
                                                Blumenthal Law Group PC
                                                180 N. LaSalle Street, Suite 3700
                                                Chicago, Illinois 60601
                                                (312) 981-5055
                                                gblumenthal@blumenthal-law.com

                                                Attorneys for Domingo and Lucia Composto

## CERTIFICATE OF SERVICE

I certify that on August 18, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all parties via their attorneys of record.

*s/ Grant Blumenthal*

FILED DATE: 9/11/2020 12:52 PM   2020L008085

EXHIBIT A

FILED DATE: 9/11/2020 12:52 PM 2020L008085



July 9, 2016

Mr. Michael Matuschka
Windy City Group, Inc
3000 W. Irving Park Rd.
Chicago, IL 60608 | United States
Direct +1 773-478-4200| Mobile +1 312- 446-0541
Mike@WindyCityGroup.com

## RE: Lease/ Purchase proposal the following property: 9500 River Street, Schiller Park, IL Off-site O'Hare Airport Parking:

Dear Michael,

I am pleased to submit for your consideration the following proposal on behalf of my client, Chicago Flight Club Parking, LLC ("Tenant") to lease space in the above referenced location.

This proposal supersedes all other proposals

The following are the terms in which they would proceed to Lease negotiations with the Landlord.

| | |
|---|---|
| **TENANT:** | Chicago Flight Club Parking, LLC |
| **LANDLORD:** | Skyline Properties Schiller Park LLC |
| **PREMISES AREA:** | Approximately 90,000+/- sft of building and 65,000sft+/- of surface parking |
| **GROSS LEASABLE ARES:** | Approximately 89,560+/- sft of building and 65,000sf+/- of surface parking (Typical ratio for industrial building parking is based on 4 parking spots to 1,000sft or 36,000sft) |
| **LEASE FORM:** | Landlord's lease form, subject to negotiation between the parties. |
| **USE:** | Operation of a long term indoor/outdoor O'Hare off-site parking facility. |

FILED DATE: 9/11/2020 12:52 PM 2020L008085

-2-

**LEASE TERM:**            Ten (10) year lease with one (1) five (5) year option

**ABATEMENT PERIOD:**        Months 1-4, ("Abatement Period")

**LEASE COMMENCEMENT:**    Lease will commence after tenant receives all permits, licenses and COO.
Target date August/September, 2016

**LEASE EXPIRATION:**         10 Years and 4 months of abatement period

**CONDITION OF PREMISES:**    AS-IS

FILED DATE: 9/11/2020 12:52 PM   2020L008085



-3-

**MONTHLY GROSS RENT:**     (Months 1- 4 Abated)

1st Year  $60,000

2nd Year $70,000

3rd Year $75,000

**ESCALATIONS:**     Annual rent escalations of  2.0% shall begin in the 3rd year of the lease

**CAM & TAXES:**     Tenant will pay as additional rent any increase in Real Estate taxes over the 2015 payable in 2016 base year amounts and any other relevant expenses as defined in the lease.

**Purchase Option:**     Tenant shall have a right of first refusal.

**Exclusivity:**     Landlord shall grant Tenant the exclusive right, to operate an off-site airport parking facility specializing in valet long term parking in the "Project".



-5-

**DELIVERY CONDITIONS:** Landlord shall deliver the Premises to Tenant in broom clean "AS IS" Condition." All utilities (electric, gas and water), HVAC/mechanicals, plumbing and structural components delivered in good working order to the Premises sized for the operation of a long term parking facility. Such conditions shall be further verified prior to execution of the Letter of Intent by the parties.

**TENANT IMPROVEMENT ALLOWANCE:** N/A

FILED DATE: 9/11/2020 12:52 PM    2020L008085



-6-

**LESSOR IMPROVEMENTS:** Landlord shall repair the ceiling tiles in the office area. Repair the front of the building canopy, repave and restripe the front entrance parking area and fill and repave the recessed loading dock.

As part of demising the space, Landlord shall create additional drive-in door to the building to be to Schiller Park code and subject to further negotiation between Landlord and Tenant.
Landlord shall consult with Village officials, as well as to assist the Tenant with procurement of necessary permits, licenses and COO.

**ACCESS:** Tenant shall have twenty-four (24) hour per day, seven (7) day per week access to its Premises.

**UTILITIES:** Lessee shall be responsible for the cost of any utility consumption.

**ASSIGNMENT:** Tenant shall have the right to assign the Lease and or sub-lease to another entity with Landlord's approval.

**SIGNAGE:** Landlord will allow Tenant to construct a monument sign with Tenant's business name on River Rd. / River St. (TDB) location; in addition to monument sign with all other tenants.

To be further defined in the lease. All signage shall remain subject to landlord and municipal approval as well as Tenant.

**BROKERS:** Landlord & Tenant recognizes Vandon Forbes, LLC as the representative for Tenant and agrees to pay leasing commissions per separate agreement.

FILED DATE: 9/11/2020 12:52 PM 2020 -008085

FILED DATE: 9/11/2020 12:52 PM 2020L008085



-7-

This Letter of Intent summarizes the basic business terms and conditions on which Tenant will lease the Premises through a Lease Agreement. This letter may be executed and delivered by facsimile or email and in counterparts, each of which shall be deemed to be an original and, when taken together, shall constitute one and the same document.

This is not intended as a binding Lease, but a Letter of Intent which will serve as the basis for a Lease between the parties.

The terms and conditions of this Letter of Intent will become null and void if a response is not received by _July 11, 2016._

Sincerely,

Victor Levin

Agreed to and accepted this __09__ day of __JULY__, 2016

Tenant: _CHICAGO FLIGHT CLUB PARKING, LLC_
............................................., LLC

Print Name: ___Domingo Composto___

Landlord: Skyline ~~Lease~~ Properties Schiller Park LLC

Print Name:

Title: MANAGER - Mike MATUSCHKA

FILED DATE: 9/11/2020 12:52 PM   2020L008085

EXHIBIT B

FILED DATE: 9/11/2020 12:52 PM  2020L008085



**CHASE** ⚙

Chase.com | Contact Us | Privacy Notice | En Español |    Search: How can we help you today? 🔍    LOG OFF

CHASE ONLINE℠  Friday, June 29, 2018

My Accounts > Account Activity > Check Details

## Check Details

⚙ Print  ⚙ Help with this page

I'd like to...
▸ See Account Statements

**PLAT BUS CHECKING (...1751)**

Check Number: 2378     Post Date: 04/06/2017     Amount of Check: $25,000.00

Front 🔍 **Enlarge/Reduce Check Image**



Need help printing or saving this check?

Back 🔍 **Enlarge/Reduce Check Image**

Seq: 27
Batch: 912675
Date: 04/06/17

Need help printing or saving this check?

Return to Search Results

Security | Terms of Use | Legal Agreements and Disclosures | AdChoices ▷

© Chase's website terms, privacy and security policies don't apply to the site you're about to visit. Please review its website terms, privacy and security policies to see how they apply to you. Chase isn't responsible for (and doesn't provide) any products, services or content at this third-party site, except for products and services that explicitly carry the Chase name.

© 2018 JPMorgan Chase & Co.

FILED DATE: 9/11/2020 12:52 PM   2020L008085

# Chase Online

## PLAT BUS CHECKING (...1751)

**Check Number:** 2379    **Post Date:** 04/06/2017    **Amount of Check:** $10,000.0



Need help printing or saving this check?



Need help printing or saving this çheck?

© 2018 JPMorgan Chase & Co.

FILED DATE: 9/11/2020 12:52 PM   2020L008085

EXHIBIT C

**Bank of America**

RIVER STREET HOLDINGS, LTD | Account # ▮▮▮▮ | April 1, 2017 to April 30, 2017

Your checking account

FILED DATE: 9/11/2020 12:52 PM 2020L008085

## Deposits and other credits

| Date | Description | Amount |
|---|---|---|
| 04/10/17 | IL TLR transfer | 35,000.00 |
| 04/10/17 | Agent Assisted transfer from CHK 3419 Confirmation# 6483699477 | 10,805.00 |
| 04/25/17 | WIRE TYPE:INTL IN DATE:170425 TIME:0506 ET TRN:2017042400391019 SEQ:882418197431/440709 ORIG:1/AHUMADA CABRERA RUBEN ID:001503007807 PMT DET: $87.00 FEE DEDUCT | 161,913.00 |

**Total deposits and other credits**      **$207,718.00**

## Withdrawals and other debits

| Date | Description | Amount |
|---|---|---|
| 04/06/17 | IL TLR cash withdrawal from CHK 5905 | -100.00 |
| 04/28/17 | IL TLR cash withdrawal from CHK 5905 | -350.00 |

**Total withdrawals and other debits**      **-$450.00**

## Checks

| Date | Check # | Amount | Date | Check # | Amount |
|---|---|---|---|---|---|
| 04/07/17 | 1001 | -500.00 | 04/14/17 | 1009 | -850.00 |
| 04/07/17 | 1002 | -177.40 | 04/17/17 | 1010 | -4,500.00 |
| 04/11/17 | 1004* | -1,975.00 | 04/25/17 | 1011 | -10,000.00 |
| 04/10/17 | 1005 | -20,000.00 | 04/17/17 | 1013* | -8,500.00 |
| 04/10/17 | 1006 | -25,000.00 | 04/26/17 | 1014 | -6,980.00 |
| 04/10/17 | 1007 | -9,180.00 | 04/21/17 | 1016* | -2,000.00 |
| 04/10/17 | 1008 | -985.00 | 04/24/17 | 1018* | -1,000.00 |

continued on the next page



TIP OF THE MONTH

# Dreading the shredding?

**Go paperless** and make a statement.

- Your secure paperless statements don't need storing or shredding
- Get email reminders that link right to your statements for easy access
- View and download your business statements anytime, with no paper waste

Click **Profile & Settings** (in the upper right next to **Sign Out**) when logged in at bankofamerica.com/smallbusiness.



©2017 Bank of America Corporation | AR8GP8Q0 | SSM-11-16-0507.B

EXHIBIT D

Case 21-04074 Claim 7 Filed 04/27/20 Desc Main Document Page 6 of
Document Page 51 of 54

Domingo Composto

| --- Pay Period -- | | Reg Hrs | Reg Pay | OT | OT pay | Reg+OT Pay | Bal | Statutory Penalties |
|---|---|---|---|---|---|---|---|---|
| 5/3/2017 | 5/7/2017 | 40 | $330.00 | 0 | $0.00 | $330.00 | $330.00 | |
| 5/8/2017 | 5/14/2017 | 40 | $330.00 | 16 | $198.00 | $528.00 | $858.00 | |
| 5/15/2017 | 5/21/2017 | 40 | $330.00 | 16 | $198.00 | $528.00 | $1,386.00 | |
| 5/22/2017 | 5/28/2017 | 40 | $330.00 | 16 | $198.00 | $528.00 | $1,914.00 | |
| 5/29/2017 | 6/4/2017 | 40 | $330.00 | 16 | $198.00 | $528.00 | $2,442.00 | $122.10 |
| 6/5/2017 | 6/11/2017 | 40 | $330.00 | 16 | $198.00 | $528.00 | $2,970.00 | |
| 6/12/2017 | 6/18/2017 | 40 | $330.00 | 16 | $198.00 | $528.00 | $3,498.00 | |
| 6/19/2017 | 6/25/2017 | 28 | $231.00 | 0 | $0.00 | $231.00 | $3,729.00 | |
| 6/26/2017 | 7/2/2017 | 8 | $66.00 | 0 | $0.00 | $66.00 | $3,795.00 | $189.75 |
| 7/3/2017 | 7/9/2017 | 40 | $330.00 | 16 | $198.00 | $528.00 | $4,323.00 | |
| 7/10/2017 | 7/16/2017 | 40 | $330.00 | 16 | $198.00 | $528.00 | $4,851.00 | |
| 7/17/2017 | 7/23/2017 | 40 | $330.00 | 16 | $198.00 | $528.00 | $5,379.00 | |
| 7/24/2017 | 7/30/2017 | 40 | $330.00 | 16 | $198.00 | $528.00 | $5,907.00 | |
| 7/31/2017 | 8/6/2017 | 40 | $330.00 | 16 | $198.00 | $528.00 | $6,435.00 | $321.75 |
| 8/7/2017 | 8/13/2017 | 40 | $330.00 | 16 | $198.00 | $528.00 | $6,963.00 | |
| 8/14/2017 | 8/20/2017 | 40 | $330.00 | 16 | $198.00 | $528.00 | $7,491.00 | |
| 8/21/2017 | 8/27/2017 | 40 | $330.00 | 16 | $198.00 | $528.00 | $8,019.00 | |
| 8/28/2017 | 9/3/2017 | 40 | $330.00 | 16 | $198.00 | $528.00 | $8,547.00 | $427.35 |
| 9/4/2017 | 9/10/2017 | 40 | $330.00 | 16 | $198.00 | $528.00 | $9,075.00 | |
| 9/11/2017 | 9/17/2017 | 40 | $330.00 | 16 | $198.00 | $528.00 | $9,603.00 | |
| 9/18/2017 | 9/24/2017 | 40 | $330.00 | 16 | $198.00 | $528.00 | $10,131.00 | |
| 9/25/2017 | 10/1/2017 | 40 | $330.00 | 16 | $198.00 | $528.00 | $10,659.00 | $532.95 |
| 10/2/17 | 10/8/2017 | 40 | $330.00 | 8 | $99.00 | $429.00 | $11,088.00 | |
| 10/9/2017 | 10/15/2017 | 40 | $330.00 | 8 | $99.00 | $429.00 | $11,517.00 | |
| 10/16/2017 | 10/22/2017 | 40 | $330.00 | 8 | $99.00 | $429.00 | $11,946.00 | |
| 10/23/2017 | 10/29/2017 | 40 | $330.00 | 8 | $99.00 | $429.00 | $12,375.00 | |
| 10/30/2017 | 11/5/2017 | 40 | $330.00 | 8 | $99.00 | $429.00 | $12,804.00 | $640.20 |
| 11/6/2017 | 11/12/2017 | 40 | $330.00 | 8 | $99.00 | $429.00 | $13,233.00 | |
| 11/13/2017 | 11/19/2017 | 40 | $330.00 | 8 | $99.00 | $429.00 | $13,662.00 | |
| 11/20/2017 | 11/26/2017 | 40 | $330.00 | 8 | $99.00 | $429.00 | $14,091.00 | |
| 11/27/2017 | 12/3/2017 | 40 | $330.00 | 8 | $99.00 | $429.00 | $14,520.00 | $726.00 |
| 12/4/2017 | 12/10/2017 | 40 | $330.00 | 8 | $99.00 | $429.00 | $14,949.00 | |
| 12/11/2017 | 12/17/2017 | 40 | $330.00 | 8 | $99.00 | $429.00 | $15,378.00 | |
| 12/18/2017 | 12/24/2017 | 40 | $330.00 | 8 | $99.00 | $429.00 | $15,807.00 | |
| 12/25/2017 | 12/31/2017 | 40 | $330.00 | 8 | $99.00 | $429.00 | $16,236.00 | $811.80 |
| 1/1/2018 | 1/7/2018 | 40 | $330.00 | 8 | $99.00 | $429.00 | $16,665.00 | |
| 1/8/2018 | 1/14/2018 | 40 | $330.00 | 8 | $99.00 | $429.00 | $17,094.00 | |
| 1/15/2018 | 1/21/2018 | 40 | $330.00 | 8 | $99.00 | $429.00 | $17,523.00 | |
| 1/22/2018 | 1/28/2018 | 40 | $330.00 | 8 | $99.00 | $429.00 | $17,952.00 | |
| 1/29/2018 | 2/4/2018 | 40 | $330.00 | 8 | $99.00 | $429.00 | $18,381.00 | $919.05 |
| 2/5/2018 | 2/11/2018 | 40 | $330.00 | 8 | $99.00 | $429.00 | $18,810.00 | |
| 2/12/2018 | 2/18/2018 | 40 | $330.00 | 8 | $99.00 | $429.00 | $19,239.00 | |
| 2/19/2018 | 2/25/2018 | 40 | $330.00 | 8 | $99.00 | $429.00 | $19,668.00 | |
| 2/26/2018 | 3/4/2018 | 40 | $330.00 | 8 | $99.00 | $429.00 | $20,097.00 | $1,004.85 |
| 3/5/2018 | 3/11/2018 | 40 | $330.00 | 8 | $99.00 | $429.00 | $20,526.00 | |
| 3/12/2018 | 3/18/2018 | 40 | $330.00 | 8 | $99.00 | $429.00 | $20,955.00 | |
| 3/19/2018 | 3/25/2018 | 40 | $330.00 | 8 | $99.00 | $429.00 | $21,384.00 | |
| 3/26/2018 | 4/1/2018 | 40 | $330.00 | 8 | $99.00 | $429.00 | $21,813.00 | $1,090.65 |
| 4/2/2018 | 4/8/2018 | 40 | $330.00 | 8 | $99.00 | $429.00 | $22,242.00 | |
| 4/9/2018 | 4/15/2018 | 40 | $330.00 | 8 | $99.00 | $429.00 | $22,671.00 | |
| 4/16/2018 | 4/22/2018 | 40 | $330.00 | 8 | $99.00 | $429.00 | $23,100.00 | |
| 4/23/2018 | 4/29/2018 | 40 | $330.00 | 8 | $99.00 | $429.00 | $23,529.00 | |
| 4/30/2018 | 5/6/2018 | 40 | $330.00 | 8 | $99.00 | $429.00 | $23,958.00 | $1,197.90 |
| 5/7/2018 | 5/13/2018 | 40 | $330.00 | 8 | $99.00 | $429.00 | $24,387.00 | |
| 5/14/2018 | 5/20/2018 | 40 | $330.00 | 8 | $99.00 | $429.00 | $24,816.00 | |
| 5/21/2018 | 5/27/2018 | 40 | $330.00 | 8 | $99.00 | $429.00 | $25,245.00 | |
| 5/28/2018 | 6/3/2018 | 40 | $330.00 | 8 | $99.00 | $429.00 | $25,674.00 | $1,283.70 |
| 6/4/2018 | 6/10/2018 | 40 | $330.00 | 8 | $99.00 | $429.00 | $26,103.00 | |
| 6/11/2018 | 6/17/2018 | 40 | $330.00 | 8 | $99.00 | $429.00 | $26,532.00 | |
| 6/18/2018 | 6/24/2018 | 40 | $330.00 | 8 | $99.00 | $429.00 | $26,961.00 | |
| 6/25/2018 | 7/1/2018 | 40 | $330.00 | 8 | $99.00 | $429.00 | $27,390.00 | $1,369.50 |
| 7/2/2018 | 7/8/2018 | 40 | $330.00 | 8 | $99.00 | $429.00 | $27,819.00 | |

| 7/9/2018 | 7/15/2018 | 40 | $330.00 | 8 | $99.00 | $429.00 | $28,248.00 | |
| 7/16/2018 | 7/22/2018 | 32 | $264.00 | 0 | $0.00 | $264.00 | $28,512.00 | $1,425.60 |
| | | 2508 | $20,691.00 | 632 | $7,821.00 | | | $12,063.15 |

| | |
|---|---|
| Minimum Wage Due for the period 5/3/2017 to 7/31/2018 | $28,512.00 |
| Penalties for the period 5/3/2017 to 7/31/2018 | $12,063.15 |
| Penalties for the period 8/1/2018 to 2/20/2020 | $27,086.40 |

EXHIBIT E

Lucia Composto

| --- Pay Period -- | | Reg Hrs | Reg Pay | OT | OT pay | Reg+OT Pay | Bal | Statutory Penalties |
|---|---|---|---|---|---|---|---|---|
| 5/3/2017 | 5/7/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $99.00 | |
| 5/8/2017 | 5/14/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $198.00 | |
| 5/15/2017 | 5/21/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $297.00 | |
| 5/22/2017 | 5/28/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $396.00 | |
| 5/29/2017 | 6/4/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $495.00 | $24.75 |
| 6/5/2017 | 6/11/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $594.00 | |
| 6/12/2017 | 6/18/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $693.00 | |
| 6/19/2017 | 6/25/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $792.00 | |
| 6/26/2017 | 7/2/2017 | 0 | $0.00 | 0 | $0.00 | $0.00 | $792.00 | $39.60 |
| 7/3/2017 | 7/9/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $891.00 | |
| 7/10/2017 | 7/16/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $990.00 | |
| 7/17/2017 | 7/23/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $1,089.00 | |
| 7/24/2017 | 7/30/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $1,188.00 | |
| 7/31/2017 | 8/6/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $1,287.00 | $64.35 |
| 8/7/2017 | 8/13/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $1,386.00 | |
| 8/14/2017 | 8/20/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $1,485.00 | |
| 8/21/2017 | 8/27/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $1,584.00 | |
| 8/28/2017 | 9/3/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $1,683.00 | $84.15 |
| 9/4/2017 | 9/10/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $1,782.00 | |
| 9/11/2017 | 9/17/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $1,881.00 | |
| 9/18/2017 | 9/24/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $1,980.00 | |
| 9/25/2017 | 10/1/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $2,079.00 | $103.95 |
| 10/2/17 | 10/8/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $2,178.00 | |
| 10/9/2017 | 10/15/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $2,277.00 | |
| 10/16/2017 | 10/22/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $2,376.00 | |
| 10/23/2017 | 10/29/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $2,475.00 | |
| 10/30/2017 | 11/5/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $2,574.00 | $128.70 |
| 11/6/2017 | 11/12/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $2,673.00 | |
| 11/13/2017 | 11/19/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $2,772.00 | |
| 11/20/2017 | 11/26/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $2,871.00 | |
| 11/27/2017 | 12/3/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $2,970.00 | $148.50 |
| 12/4/2017 | 12/10/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $3,069.00 | |
| 12/11/2017 | 12/17/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $3,168.00 | |
| 12/18/2017 | 12/24/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $3,267.00 | |
| 12/25/2017 | 12/31/2017 | 12 | $99.00 | 0 | $0.00 | $99.00 | $3,366.00 | $168.30 |
| 1/1/2018 | 1/7/2018 | 12 | $99.00 | 0 | $0.00 | $99.00 | $3,465.00 | |
| 1/8/2018 | 1/14/2018 | 12 | $99.00 | 0 | $0.00 | $99.00 | $3,564.00 | |
| 1/15/2018 | 1/21/2018 | 12 | $99.00 | 0 | $0.00 | $99.00 | $3,663.00 | |
| 1/22/2018 | 1/28/2018 | 12 | $99.00 | 0 | $0.00 | $99.00 | $3,762.00 | |
| 1/29/2018 | 2/4/2018 | 12 | $99.00 | 0 | $0.00 | $99.00 | $3,861.00 | $193.05 |
| 2/5/2018 | 2/11/2018 | 12 | $99.00 | 0 | $0.00 | $99.00 | $3,960.00 | |
| 2/12/2018 | 2/18/2018 | 12 | $99.00 | 0 | $0.00 | $99.00 | $4,059.00 | |
| 2/19/2018 | 2/25/2018 | 12 | $99.00 | 0 | $0.00 | $99.00 | $4,158.00 | |
| 2/26/2018 | 3/4/2018 | 12 | $99.00 | 0 | $0.00 | $99.00 | $4,257.00 | $212.85 |
| 3/5/2018 | 3/11/2018 | 12 | $99.00 | 0 | $0.00 | $99.00 | $4,356.00 | |
| 3/12/2018 | 3/18/2018 | 12 | $99.00 | 0 | $0.00 | $99.00 | $4,455.00 | |
| 3/19/2018 | 3/25/2018 | 12 | $99.00 | 0 | $0.00 | $99.00 | $4,554.00 | |
| 3/26/2018 | 4/1/2018 | 12 | $99.00 | 0 | $0.00 | $99.00 | $4,653.00 | $232.65 |
| 4/2/2018 | 4/8/2018 | 12 | $99.00 | 0 | $0.00 | $99.00 | $4,752.00 | |
| 4/9/2018 | 4/15/2018 | 12 | $99.00 | 0 | $0.00 | $99.00 | $4,851.00 | |
| 4/16/2018 | 4/22/2018 | 12 | $99.00 | 0 | $0.00 | $99.00 | $4,950.00 | |
| 4/23/2018 | 4/29/2018 | 12 | $99.00 | 0 | $0.00 | $99.00 | $5,049.00 | |
| 4/30/2018 | 5/6/2018 | 12 | $99.00 | 0 | $0.00 | $99.00 | $5,148.00 | $257.40 |
| 5/7/2018 | 5/13/2018 | 12 | $99.00 | 0 | $0.00 | $99.00 | $5,247.00 | |
| 5/14/2018 | 5/20/2018 | 12 | $99.00 | 0 | $0.00 | $99.00 | $5,346.00 | |
| 5/21/2018 | 5/27/2018 | 12 | $99.00 | 0 | $0.00 | $99.00 | $5,445.00 | |
| 5/28/2018 | 6/3/2018 | 12 | $99.00 | 0 | $0.00 | $99.00 | $5,544.00 | $277.20 |
| 6/4/2018 | 6/10/2018 | 12 | $99.00 | 0 | $0.00 | $99.00 | $5,643.00 | |
| 6/11/2018 | 6/17/2018 | 12 | $99.00 | 0 | $0.00 | $99.00 | $5,742.00 | |
| 6/18/2018 | 6/24/2018 | 2 | $16.50 | 0 | $0.00 | $16.50 | $5,758.50 | $287.93 |
| | | 698 | $5,758.50 | 0 | $0.00 | | | $2,223.38 |

| | | |
|---|---|---|
| Minimum Wage Due for the period 5/3/2017 to 6/19/2018 | | $5,758.50 |
| Penalties for the period 5/3/2017 to 6/19/2018 | | $2,223.38 |
| Penalties for the period 6/20/2018 to 2/20/2020 | | $5,758.50 |